77 So.2d 202 (1955)
Mrs. Nathalie BAYON, wife of/and Albert J. Nicaud
v.
Albert L. PETTINGILL and George Sladovich, Jr.
No. 20393.
Court of Appeal of Louisiana, Orleans.
January 3, 1955.
Rehearings Denied January 31, 1955.
Writ of Certiorari Denied March 21, 1955.
*203 Nicaud & Brister, New Orleans, for plaintiffs and appellees.
George Sladovich, Jr. and Harold J. Neubauer, New Orleans, for defendants and appellants.
McBRIDE, Judge.
The defendants, Albert L. Pettingill and George Sladovich, Jr., have appealed from the judgment below condemning them in solido to pay $1,780 to plaintiffs because of the breach of a contract to purchase the property 6474 Canal Boulevard.
Pettingill on May 16, 1952, agreed in writing to purchase the property from plaintiffs for $17,800, binding himself to deposit with the sellers immediately ten percent of the purchase price. George Sladovich, Jr., attorney for Pettingill who represented him in the transaction, gave his personal check dated May 16, 1952, to plaintiffs for $1,780, which check it was intended would represent the ten percent deposit which Pettingill was obligated to make. The check, drawn on the Louisiana Bank & Trust Company, was made payable to the order of the plaintiffs, and on its face in the handwriting of Mr. Sladovich appears the notation "deposit on purchase of 6474 Canal Boulevard Albt. A. Pettingill."
The agreement to sell contained a proviso that the sale was conditioned upon the ability of Pettingill to borrow upon the property as security the sum of $9,000, represented by a mortgage loan at a rate of interest not exceeding six percent per annum. It was further stipulated that if the purchaser was unsuccessful in obtaining such loan within thirty days, in that event the deposit would be refunded to the purchaser.
The check was accepted by the plaintiffs who deposited it in their account with the Hibernia National Bank on May 21, 1952. The defendants freely admit that before the check had cleared, Mr. Sladovich, who acted pursuant to instructions from Pettingill, stopped payment on the check. This took place on May 21, 1952, or within three days of the date of the contract. This suit ensued.
The plaintiffs' position is that by having his attorney stop payment of the check which had been given in representation of the deposit, Pettingill fraudulently repudiated his contract and that this action in itself rendered both defendants liable for the amount of the deposit. The defense is that Pettingill could not secure the loan of $9,000 to finance his purchase of plaintiffs' property, and he was, therefore, legally within his rights in withdrawing the deposit.
Pettingill did make some kind of effort to obtain a loan to assist him in financing the purchase price of the property. He applied first to Metairie Savings Bank & Trust Company, which institution declined to make the loan, and Pettingill's story is that he received oral notification that the loan had been declined from Mr. W. T. Barker, the Vice-President of the bank, on May 20, 1952, and that this oral notification was subsequently confirmed by letter dated May 23, 1952.
It is not disputed that upon learning of the disposition of the bank not to make the loan, Pettingill requested Mr. Sladovich to immediately stop payment on the check and that Mr. Sladovich thereupon ordered his bank not to honor the check, the net result being that plaintiffs never received the money representing the deposit which Pettingill's contract bound him to make.
Pettingill endeavored to prove that he made two other attempts to secure loans *204 on the property after payment of the check had been stopped, once by applying on May 21, 1952, to Union Savings & Loan Association, which refused to make the loan, and later by attempting to borrow the money from a man named Badon, who was unwilling to lend it. There is argument pro and con whether Pettingill acted in good faith in his attempts to obtain a loan on the property, but we are not interested in that detail for the good and sufficient reason that when Pettingill instructed his attorney to stop payment of the check for $1,780, Pettingill was in effect withdrawing the deposit which he had agreed to make, which agreement was a substantial and important part of the contract to purchase.
The legal question involved is whether Pettingill's action amounted to such a breach of the contract as will entitle plaintiffs to recover from him the amount of the deposit.
In Samuelson v. Bosk, 219 La. 477, 53 So.2d 239, 240, the Supreme Court had occasion to pass on a case involving practically the same issue. There the defendants who had contracted to purchase the property made a cash deposit of $1,000 on account of the sale, whereas the agreement stipulated that the deposit should have been for $2,400. It was held that such failure to post the deposit of $2,400 in full constituted a breach of the contract which gave plaintiff the right to damages thereunder. The Court said:
"* * * The agreement contains the provision that `If this offer is accepted I will deposit with Vendor's Agent immediately in cash' the sum of $2,400; and the further provisions that `In the event that purchaser fails to comply with this agreement within the time specified, the vendor shall have the right either to declare the deposit, ipso facto, forfeited,' or `may demand specific performance;' and the purchaser, `in the event that the vendor does not comply with this agreement to sell within the time specified, * * * shall have the right either to demand the return of double the deposit, or specific performance.' * * *
* * * * * *
"An examination of these cases, State ex rel. Bond v. Register of Conveyances, 162 La. 362, 110 So. 559, and Tucker v. Rogers, 172 La. 445, 134 So. 388, shows that the plaintiff in each suit was the prospective purchaser, who failed to tender the deposit called for by the contract before the offer was withdrawn, and therefore could not enforce specific performance of the contract in the first case, or recover damages for the breach thereof in the second. It is clear that the law there applicable is neither pertinent nor controlling under the facts of this case. The defendants herein, William and Anna Bosk, in their offer to purchase the property of the plaintiff, clearly and unmistakably agreed that if the offer were accepted they would immediately post a deposit of $2,400. They are bound by the terms of the contract, and failure to make the agreed deposit constituted a breach of their obligation, thereby giving plaintiff a right to specific performance or to damages under the express provisions of Articles 1926 and 1927, Revised Civil Code."
Some contention is made that the plaintiffs themselves should have endeavored to obtain the loan on Pettingill's behalf. The best answer to that contention is that if it can be said that the plaintiffs were under such an obligation any obligation on their part to secure the loan for the purchaser certainly terminated when Pettingill breached the contract after receding therefrom by withdrawing the deposit of ten percent of the purchase price. He is clearly liable to plaintiffs for the amount thereof under LSA-C.C. art. 2463.
Mr. Sladovich should not have been condemned in the judgment as he was to the knowledge of plaintiffs merely the attorney and agent for Pettingill. The facts surrounding the giving of the check *205 are that Pettingill had no bank account of his own and turned over to Mr. Sladovich the amount of the deposit in the form of cash and requested him to issue to the plaintiffs his own check for the amount. Under these circumstances we fail to see how Mr. Sladovich can be said to be legally liable to the plaintiffs.
For the reasons assigned, it is ordered, adjudged and decreed that that portion of the judgment which runs in favor of plaintiffs and against defendant, Albert L. Pettingill, be and the same is hereby affirmed, and in all other respects the said judgment is hereby annulled, avoided and reversed.
Albert L. Pettingill is cast for the costs of both courts.
Reversed in part. Affirmed in part.